BEFORE THE GOJET AIRLINES AND TEAMSTERS LOCAL 618
SYSTEM BOARD OF ADJUSTMENT
ALAN A. SYMONETTE, NEUTRAL

IN THE MATTER OF:                               )
                                                )
GoJet Airlines                                  )
                                                )
            and                                 )
                                                )
Teamsters Local 618                             )
                                                )
Grievance: Mark South Discharge                 )
                                                )

## OPINION AND AWARD

| | | |
|---|---|---|
| Before: | | Alan A. Symonette, Esq.<br>Impartial Board Member |
| | Eric Kukowski, Esq. | Randy Richert<br>Company Board Members |
| | Gerald Kappauff | Tom Cole<br>Union Board Members |
| Appearances: | GoJet Airlines | Leslie Cavender, Esq. |
| | Teamsters Local 618 | Gary S. Wolfe, Esq. |

Subject:   Termination, Just Cause, Sick Leave Abuse, Excessive Absences, Policy Interpretation, Contract Interpretation, Evidence.

Date of Grievance:     May 21, 2010

Date of Hearing:       April 23, 2012
                       St. Louis, MO

**Statement of the Award:** The grievance is sustained in part. The Company has failed to meet its burden of establishing that the grievant had engaged in chronic absenteeism. The Company did not follow the terms of its General Operations Manual with respect to the imposition of

**EXHIBIT A**

GoJet Airlines and
Teamsters Local 618
Grievance: Mark South Discharge
Page 2

progressive discipline for this offense. This should mitigate the discipline from termination.

The evidence did show that the grievant failed to follow appropriate policy in reporting off sick for his scheduled May 12, trip. This gives the appearance the grievant abused Company policy in order to circumvent the denial of FMLA leave. Therefore, the discipline should be reduced to a 60 day suspension. Given that the issue of remedy has been set aside for a separate adjudicatory hearing, this Panel shall only retain jurisdiction for that purpose.

GoJet Airlines and
Teamsters Local 618
Grievance: Mark South Discharge
Page 3

## INTRODUCTION

This matter concerns a grievance that was presented to the GoJet Airlines System Board pursuant to the Collective Bargaining Agreement between GoJet Airlines LLC and its pilots represented by the Teamsters Airline Division Union Local 618. The underlying grievance was filed by the Union on May 21, 2010 on behalf of the grievant Mr. Mark South. The grievance alleges that the Company violated the Collective Bargaining Agreement when it unjustly terminated Mr. South. The Union seeks to have Mr. South reinstated and to be made whole.

The Company on the other hand maintains that the grievant was justly terminated for excessive absences and for abusing the Company's sick leave policy. The parties were unable to resolve the matter and therefore submitted the issue to the five person System Board of Adjustment. The parties agreed to initially bifurcate the hearing for the purpose of hearing and resolving an issue determining whether the System Board had jurisdiction to hear the dispute. That issue was presented to Arbitrator Peter R. Meyers who on May 3, 2011 issued an award on behalf of the System Board finding that it had jurisdiction over the matter.

Subsequently, this undersigned arbitrator was selected by the parties to hear evidence concerning the merits of the dispute. The parties agreed as part of the procedure to again bifurcate this hearing in order to address the sole question of whether the Company had just cause to terminate the grievant's employment. It was agreed that if the System Board finds that there was no just cause to terminate the grievant the issue concerning the appropriate remedy would be taken up at a hearing at a later date.

GoJet Airlines and
Teamsters Local 618
Grievance: Mark South Discharge
Page 4

The hearing to address the merits of this matter was held on April 23, 2012 in St. Louis, Missouri. Throughout the hearing the parties were represented by counsel who presented evidence through the sworn oral testimony of witnesses and through documents. The parties also had the opportunity to confront the evidence presented by the opposing side. The hearing was closed after the presentation of written post hearing briefs.

## BACKGROUND

The Employer GoJet Airlines is a commercial passenger airline that does business as United Express and Delta Connection. The Union, Teamsters Local 618, represents a bargaining unit consisting of the pilots employed by the airline. The grievant Mr. Mark South was hired by the Company on January 5, 2009 as a first officer. The grievant has experience as a pilot for the US Air Force and for other commercial carriers. At all times material herein the grievant's immediate supervisor was Captain Larry Balocca. Captain Balocca served as the Flight Manager at the airline's base at Chicago O'Hare Airport. Capt. Balocca supervises approximately 250 pilots at the Chicago O'Hare base including the grievant. Capt. Balocca's superior is the Company's Chief Pilot Captain Dennis Craig. As the evidence will set forth herein Captain Craig has the ultimate responsibility for approving leaves as well as for imposing discipline of the Company's pilots.

The events that resulted in the grievant's termination began with his request for leave pursuant to the Family Medical Leave Act [FMLA] which submitted to the Company on or about April 21, 2010. The completed form including the findings of the physician was submitted on April 30, 2010. According to the testimony presented at the hearing, the grievant's wife had been scheduled to undergo major rotator cuff surgery on

GoJet Airlines and
Teamsters Local 618
Grievance: Mark South Discharge
Page 5

May 7, 2010. The grievant requested leave from May 7 through May 15, 2010 ostensibly to care for his wife until another family member could arrive to relieve him. According to his schedule the grievant was assigned two flight trips during that period. The first four day trip began May 7 through May 10, 2010. The second trip was scheduled from May 12 through the 16th, 2010.

The FMLA request was completed with the signature of the health care provider on April 30, 2010 and submitted to Captain Balocca who forwarded it to to Captain Craig. By letter dated May 5, 2010 Captain Craig informed the grievant that his request was being denied for two reasons. The first reason was because the Company concluded that the grievant had worked less than 60% of his monthly guarantee on three occasions during the preceding 12 months. Those months were June 2009, November 2009 and February 2010. Secondly, the request was denied because the grievant had failed to give 30 days' advanced notice of the need to take leave. Captain Craig determined that the surgery was not of an emergency nature which would waive the 30 day requirement.

The decision was protested by the Union through its president and business representative Mike Foster who based upon the Union's interpretation of the FMLA eligibility rules concluded that the grievant had worked more than 60% of his monthly guarantee in the preceding 12 months. Moreover, the Union contended that the grievant had given as much advance notice as he possibly could, given his wife's condition.

On May 6, 2010 the grievant sent an email to Captain Craig acknowledging receipt of the letter of denial and then requesting the use of any personal time, personal days, sick time or vacation in order to accompany his wife to surgery and for the week following. The grievant indicated that he would need from May 7 through May 10 as an

GoJet Airlines and
Teamsters Local 618
Grievance: Mark South Discharge
Page 6

absolute minimum which would clearly involve the four day flight that he had scheduled for May 7 through May 10.

Captain Craig stated that due to staffing issues he would not be able to approve any leaves of absence. He also noted that in order for the grievant to take vacation time he would have to bid pursuant to the provisions of the Collective Bargaining Agreement through crew planning.

At the time Captain Balocca received his copy of the email denying the FMLA leave, he began looking for a substitute to take the scheduled trip commencing on the morning of May 7. He was successful in finding a substitute. However, on that day, Captain Balocca was advised that there had been a sick call from the grievant. This was part of a regular email from crew scheduling showing those individuals who had called out sick for the day. After receiving the notification Captain Balocca contacted the grievant to inform him that he had found someone to cover his trip and that he did not need to call in sick. Admittedly Captain Balocca felt that the grievant indeed was not sick at the time.

The sick call was eventually reported to Captain Craig. Admittedly, Captain Craig stated that he did not ask Captain Balocca to request a doctor's note from the grievant. According to Captain Craig he felt that this was not necessary simply because the grievant was not sick and therefore there was no reason to. Captain Craig assumed that this would cover the trip that the grievant could not make because he had to be with his wife.

However, on May 12 Captain Craig received another notification from crew scheduling that the grievant had called in sick. Captain Craig subsequently called the

GoJet Airlines and
Teamsters Local 618
Grievance: Mark South Discharge
Page 7

grievant and wanted to record the conversation. During that conversation he recalled asking the grievant if he was actually sick or was he just home with his wife. According to Captain Craig's recollection the grievant gave him conflicting information but eventually stated that he was both sick and attending to his wife. Captain Craig then asked the grievant whether he was well enough to travel to his office in St. Louis for a meeting concerning his absences. The grievance stated that he would not be able to come on the 12th or the 13th. Finally, Captain Craig stated the grievant should come to a meeting on May 14. Captain Craig testified that as part of the conversation he offered "positive space travel" to allow him to fly from Chicago to St. Louis. The grievant stated that he would try to come on the 14th and requested that Union representatives be present. Captain Craig called Chris Slavens one of the Union representatives and asked him to come in for the meeting.

When May 14 arrived the grievant did not show up for the meeting. His Union representative did. Captain Craig recalled waiting for approximately one hour and then Mr. Slavens made some phone calls to see where the grievant was. After waiting an hour Captain Craig started typing the termination letter and told the Union that it would be mailed out that day. That letter dated May 14, 2010 informed the grievant that his employment with the airlines was terminated effective that day. According to Captain Craig his termination was based on chronic absence and abuse of sick leave. In addition to the issues surrounding FMLA requests Captain Craig noted that the grievant had sustained a substantial number of absences since he was employed by the Company.

Captain Craig testified that he had previously verbally warned the grievant about his absences when he was elevated to the rank of captain earlier in the year. Any pilot

GoJet Airlines and
Teamsters Local 618
Grievance: Mark South Discharge
Page 8

hired by the Company is hired as a First Officer until he receives the requisite number of hours and seniority in order to qualify in order to become a captain.

The grievant's absence record showed that his chronic absenteeism continued such that he had not accrued sufficient hours during the 12 month period prior to his FMLA request. He also told the grievant that no other leave was available. Yet, the grievant called in sick even though it was clear that the grievant was not sick. This was not an initial problem since Captain Balocca was able to find a substitute to take his trip. This became a problem when the grievant again called in sick and refused to report to work for his second trip. Moreover, Captain Craig asserted that the grievant was insubordinate by failing to attend the mandatory meeting on May 14. It was because of all of these events that he decided to terminate the grievant.

The grievant on the other hand acknowledges that he had substantial number of absences. His record disclosed that he had been absent from March 25, 2009 through April 14, 2009 due to a sinus infection and major ear blockage that required extensive medical treatment. Then in July 2009 the grievant was absent from July 4 through July 15 due to thyroid medication that required a two week recuperation period pursuant to the FAA rules. The grievant further took some personal time to deal with family issues in September 2009. Finally, the grievant was absent from October 28 to November 13, 2009 on a leave of absence. The grievant was again off in 2010 from February 17 through April 8, 2010 due to an on the job injury. The grievant admits that he met with Captain Craig at the end of his probationary period and when he became eligible for the rank of Captain.

GoJet Airlines and
Teamsters Local 618
Grievance: Mark South Discharge
Page 9

He did not view this meeting as disciplinary in order to address his absences. According to the grievant he recalled that Captain Craig just told him that he had a substantial number of absences during the prior year. The grievant stated that he would do everything to remain as healthy as he can. However, he did not consider the discussion to constitute a formal oral warning under the absenteeism policy. Indeed, after the grievant was promoted to the full time position of Captain he sustained his on the job injury.

The grievant requested FMLA leave because his wife sustained injuries on March 10, 2010 when she slipped down the stairs at her home. At first, the injury to her shoulder was considered to be only soft tissue damage. However, at the end of the month the grievant and his wife decided to see an orthopedic specialist who performed a MRI. According to the grievant the MRI showed a tear of the rotator cuff and also a torn ligament. Therefore, the orthopedist recommended immediate surgery. The grievant noted that his wife was the owner of a mortgage company and it would be very difficult for her to perform her job with the shoulder of her writing hand immobilized.

The grievant stated that he tried to have the surgery delayed as much as possible due to the significant number of absences he had previously sustained. However, the surgeon could only postpone the surgery from April 23, 2010 to May 7, 2010. As a result, on April 21, 2010 the grievant contacted Captain Balocca and requested the FMLA forms. The grievant completed his portion of the form on or about April 21, 2010. The remainder of the form was completed by the grievant's or his wife's healthcare provider on April 30, 2010 and the complete document was then submitted to Captain Craig.

GoJet Airlines and
Teamsters Local 618
Grievance: Mark South Discharge
Page 10

When the grievant received notice that his FMLA request was denied he admitted submitting an email to Captain Craig trying to find any possible way to get time off to take care of his wife. Given Captain Craig's response, the grievant stated that he noted that he had a four day trip beginning May 7. He admitted calling in sick but found out from Captain Balocca that he was able to find someone to cover that assignment. However, the grievant contended that he needed more time up until the 15th at which time his mother-in-law would be able to travel to relieve him of his care giving responsibilities. In the meantime, the grievant stated that he tried to find anyone who could cover his next trip.

The grievant also testified that he contacted a Dr. Mariani who he thought was the Company's physician and told him that due to all of the stress caused by taking care of his wife and his wife's business, that he was quite fatigued. Dr. Mariani recommended that he contact his personal physician and tell him what was going on and let them decide whether or not he was capable of flying.

According to the grievant on May 6, 2010 he received a doctor's note from the Iowa Health Physician's and Clinics that recommended that the grievant not go on flight status through May 14, 2010 and released him to return to return to work on May 16, 2010. The grievant claimed that he had submitted a copy of this form to Dr. Mariani. However, the Company itself claims that Dr. Mariani did not work for the company and that the grievant did not submit the doctor's note to anyone in management even though the grievant claimed that he had submitted the doctor's note to crew scheduling.

In support of this, the Company provided a recording of his call off on May 6 in which he did inform the person in crew scheduling that he did have a doctor's note.