However, there is no evidence that anyone from management requested that the grievant produce such a note. The grievant stated that he had made a number of calls prior to his second trip to make sure that his sick call had been acknowledged because he understood that as a result of Captain Balocca's efforts that the sick call on May 6, 2010 had been withdrawn. The grievant however called in sick and subsequently received the call from Captain Craig demanding that he travel to St. Louis to meet with him concerning his absences.

The grievant denies ever agreeing to meet with Captain Craig on the 14th even though he testified the he stated that he would try. Rather he indicated that he would have difficulty attending the meeting and he felt that he was not able to fly because he had called in sick. As a result, he would have had to drive from his home in Ankeny, Iowa to St. Louis which was at least a 6 hour drive. If he would take him at least 8 hours to drive. The grievant also claims that he contacted a number of Union representatives to advise them that he would not be attending the meeting and requested that they be present on his behalf.

The Company questions the grievant's credibility regarding the doctor's note and the number of calls that he made to crew scheduling as well as any calls that he made advising Union representation that he would not be attending the May 14 meeting. Nevertheless, as indicated above the grievant was terminated effective that date.

## STATEMENT OF THE ISSUE

The parties were able to stipulate to the following statement of the issue: Was the grievant Mark South terminated for just cause? If not, what shall the remedy be?

GoJet Airlines and
Teamsters Local 618
Grievance: Mark South Discharge
Page 12

# RELEVANT PROVISIONS OF THE COLLECTIVE BARGAINING AGREEMENT
# And GENERAL OPERATIONS MANUAL

## SECTION 14
## SICK LEAVE

**C.** The Company may require a Pilot to present satisfactory medical evidence that he is unable to perform his regular duties because of illness or injury.

## SECTION 15
## LEAVES OF ABSENCE

A. Personal Leave

Upon written request of specifying the reason for such request, the Company may, at its discretion, provide a Pilot an unpaid leave of absence for a specific period not to exceed twelve (12) months. Requests for time off without pay for less than 30 days will be dealt with on a case-by-case basis at Company discretion.

B. Medical Leave of Absence

1. Upon written request, a Pilot who is unable to perform his assigned duties due to illness or injury may be placed on unpaid medical leave of absence, following exhaustion of sick leave, for a period not to exceed 36 months.

F. Family and Medical Leave (FMLA)

The Company shall grant family and medical leaves in accordance with applicable law.

G. General

2. Requests for leave shall be made as far in advance as possible. Granting or denying leave in any specific case shall not constitute a precedent from future cases.

GoJet Airlines and
Teamsters Local 618
Grievance: Mark South Discharge
Page 13

    3.    A Pilot shall retain and accrue seniority while on leave of absence, and accrue longevity for the first 30 days of said leave of absence.

## SECTION 23
## DISCIPLINE AND DISCHARGE

**A.**    Representation

A Pilot is entitled to have a Union representative or any other Company employee accompany him to any meeting concerning discipline or discharge, provided the selection of a specific representative does not cause an unreasonable delay in the proceedings

B. Notices and Decisions

    1.    All notices of disciplinary action or discharge shall be in writing and shall state the reason(s).

## GENERAL OPERATIONS MANUAL
## CHAPTER 1 – GENERAL EDITION

1-2.3  EMPLOYEE HEALTH

1-2.3.1 <u>Mental or Physical Well-Being</u>

All crewmembers should be physically and mentally "Fit for Duty" when reporting for their assignment(s) and are expected to use good judgment relative to obtaining adequate rest prior to flights and relative to reporting for duty when suffering from fatigue or when under serious mental stress (i.e. serious personal problems, serious family illness, etc.). While on duty, crewmembers should not operate in a safety sensitive environment when suffering from the effects of fatigue. If any of these conditions prevail, the crewmember is required to discuss the problem(s) with their immediate supervisor.

1-2.3.3 <u>Sick Leave Policy</u>

<u>Policy:</u> GoJet operates an air transportation system for public convenience and necessity, and must be ready to meet the demands for transportation service throughout each day, every day of the year. In order to fulfill this obligation, GoJet needs everyone on duty every day on which he or she is scheduled to work.

It is understood that at times it will be necessary to be away from duties because of illness. The company believes that all employees should be protected by an intelligent and effective sick leave policy.

Since you are the person who stands to benefit directly this policy, you should know just what it means, how it works and how it applies to you individually and to the people you work with. That is the purpose of this statement. All the company asks is that you respect and abide by it.

Sick Leave is designed only to protect the earnings of the employee during necessary absence from work due to illness or injury, to aid the employee in meeting bills when sickness or injury has temporarily taken away the ability to work.

It is not a convenient method for getting another day off, or extending a weekend, or giving time to recover from self-induced illness, that is, excesses of any kinds, or for ducking out when you've been negligent or inattentive to your job. All employees, therefore, are expected to strive for perfect attendance by:

1. Maintaining reasonable health standards and taking precautions against illness.
2. Not permitting minor indispositions or inconveniences to keep them away from the job.
3. Making every effort to live and work safely – observing safety rules and practicing safety on and off the job.
4. Attending to personal affairs and obligations at times outside of scheduled working hours.

Every employee is expected to report for work regularly and on time. Good attendance is the most important job requirement.

Employees that have accrued sick leave shall be eligible for time off with pay if they cannot report for duty because of personal sickness or injury or when, because of exposure to a contagious disease, their presence would jeopardize the health of others.

The purpose of the sick leave policy is to provide help for those who reasonably and legitimately need it.

1-2.3.5 Absenteeism

The Company recognizes that absenteeism is sometimes unavoidable. Should an employee's absence appear to become excessive, an inquiry into the reasons will be necessary.

GoJet Airlines and
Teamsters Local 618
Grievance: Mark South Discharge
Page 15

1. First: Oral Inquiry –An oral inquiry is conducted by the employees Manager/Supervisor based on the employees attendance records. A review of company policy regarding absenteeism is conducted as well as counseling the employee. A written record of the counseling is placed in the employee's file.
2. Second: Should the employee's attendance continue to be unsatisfactory, the matter will be discussed with the Director of that department. Again, the employee shall be counseled and discipline may be imposed.
3. Third: Should the employee's attendance continue to be unsatisfactory the matter shall be handled by his supervisor/manager on an individual basis.

## SUMMARY OF THE ARGUMENTS OF THE PARTIES

The Company maintains that it had just cause to terminate the grievant Mr. Mark South. In general, it asserts that one of its central missions is to maintain reliability standards which are driven by its flying partners who at the time of the termination was United Airlines. As such, the Company had issued a sick leave policy as part of its general operations manual which addresses the issue of absenteeism. In that policy pilots are specifically advised that "good attendance" is the most important job requirement.

According to the Company the grievant was terminated for excessive absenteeism as demonstrated by his absence record. More importantly the grievant was terminated because he had clearly made a fraudulent sick call in violation of the sick leave policy basically because he was not satisfied with management's response that he could not take leave. Further, the Company argues that the grievant engaged in "blatant disregard for his Chief Pilot's instructions to appear for a mandatory meeting to discuss his second sick call." This amounted to "no less than insubordination and leaving GoJet with no choice but to terminate his employment."

GoJet Airlines and
Teamsters Local 618
Grievance: Mark South Discharge
Page 16

The Company emphasizes that this has no relationship to whether the grievant was indeed eligible for FMLA leave. There is also no evidence establishing that the grievant was the subject of any retaliation for trying to exercise his rights under FMLA. Moreover, the Company maintains that there is no evidence that there was any general animus toward the grievant by Chief Pilot Dennis Craig. Indeed, Craig testified that at the end of his probationary period he did not terminate him, despite the grievant's absence record but rather kept him on because he admittedly "liked" the grievant.

In its argument, the Company recognized that it had the burden of proof of showing by a preponderance of the evidence that the termination was justified. In meeting its burden while the System Board may agree that some discipline was justified the Company emphasizes that the Board must not substitute its judgment for that of the Company. The Company exercised judgment to meet its clear interest in insuring that its pilots have reliable attendance. The grievant's behavior was contrary to that interest and therefore it was within the Company's reasonable judgment that he be terminated.

The grievant's disregard for Company policy and insubordinate conduct supported its decision to terminate the grievant. The Company notes that the grievant had been previously informed that he could not take FMLA leave and that there was no leave available for him at the time that he wished. The grievant's wife's surgery was indeed a scheduled surgery and not an emergency. Therefore, if the grievant felt that it was contrary to the Collective Bargaining Agreement or to FMLA to deny him leave, the grievant should have still reported to work and then filed a grievance contesting the Company's decision. This is consistent with the clear policy in arbitration that individual's are expected to perform their duties and if there is an issue concerning

GoJet Airlines and
Teamsters Local 618
Grievance: Mark South Discharge
Page 17

whether the Company's decision was indeed proper then the individual may avail him or herself of the contractual grievance procedure. In this case the grievant failed to do so. The Company notes however that "while not specifically discharged for insubordination, South's conduct in calling in sick when unhappy with the decision to deny his request for leave under the FMLA and then his subsequent request for personal vacation or sick time clearly amounts to resorting to self help to get what he wanted at any cost."

The Company's decision to deny FMLA leave was made in good faith not only based upon its interest but as Captain Craig testified, he relied upon the advice of counsel who determined that because of the grievant's failure to maintain his eligibility he could not take any leave. Even though the Union raised the issue concerning the grievant's eligibility for FMLA the Company's interpretation was reasonable and consistent with the law. Moreover, the Company notes that at the time the leave was denied the grievant made no indication to the Company that he believed that they had erred in their calculations. Rather, he asked for other ways to obtain time off and when that failed he decided to fraudulently call in sick to get the time off he wanted.

The Company attempted to resolve the matter by arranging to have another pilot take the grievant's trip which was planned for May 6. Therefore, it did not consider the grievant's sick call since there was someone to take the trip. Management's action was consistent with the grievant's representation that he would be able to obtain coverage for his wife's for his second trip which was scheduled for May 12 through May 15. Nevertheless, on May 11, the grievant again called in sick despite the fact that he was clearly not sick.

GoJet Airlines and
Teamsters Local 618
Grievance: Mark South Discharge
Page 18

The grievant claims that he was in fact sick and that he had doctor's notes available. However, the Company's witnesses credibly testified that they did not know of any sick note and that even though the grievant stated in the conversation with crew scheduling on May 6 that he "had a note" there is no evidence that this was presented to the Company. Therefore the grievant's testimony in this regard was not credible. In general, the grievant's testimony was at best self serving.

The grievant testified in a "convoluted and confusing" manner that he notified the Company in his May 6 sick call that he would be out for the May 7 trip as well as the trip scheduled for May 12. However because Captain Balocca removed the sick call from May 7, the sick call from May 12 was also removed. That is why, according to the grievant, he called on May 11 to inform Crews scheduling that he was out. The Company contends that this testimony "is an outright, bald face lie." According to the Company the recorded call which the grievant made to crews scheduling on May 6 for the trip starting May 7 makes absolutely no mention of a sick call beyond the trip scheduled for May 7 to May 10.

The grievant also claimed that he spoke to a Doctor Mariani who he describes as the "Company doctor." The Company notes however that there is no evidence that Dr. Mariani was employed by the Company. The only evidence based upon the grievant's testimony is that Dr. Mariani is a medical review officer and a number of GoJet employees use him. Moreover, the Company notes that due to HIPPA regulations Dr. Mariani could not share any of the medical information with GoJet without the grievant's expressed written permission.

GoJet Airlines and
Teamsters Local 618
Grievance: Mark South Discharge
Page 19

Despite the grievant's statement that he forwarded a doctor's note to crew scheduling, the Company asserts that the grievant acted to the contrary. The evidence shows that the grievant had accessed his schedule on line at least 13 times between May 6 and May 11. If the grievant had presented a note there would have been no reason for him to engage in such activity of reviewing his schedule.

Finally, the Company notes that the grievant provided his cell phone records to support the fact that he had communicated with the Company regarding his personal medical situation. However it is noted through testimony that there were no phone calls to the grievant's personal physician's office the Iowa Heath Clinic who provided the notes. When questioned about this discrepancy, the grievant stated that "he also had a home phone." However, the grievant did not provide any records showing his use of his home phone to communicate with his personal physician.

The grievant's testimony was further rendered incredible because he claimed that he had contacted the Union representatives to advise him that he would not be able to attend the May 10 meeting. His phone records indicated that he made no calls to GoJet to advise them that he was not appearing at the meeting. The grievant also claims that he contacted the Union representatives to advise them that he would not attend. However one union representative Mr. Chris Slavins did appear at the meeting as scheduled and indicated to Captain Craig that he had no idea where the grievant was and attempted to contact him when he did not show up

In addition, the grievant also claims that he was unable to make the meeting because he was not allowed to utilize his travel benefits on United while on sick leave. However, the evidence indicated that the grievant never asked Captain Craig if that

GoJet Airlines and
Teamsters Local 618
Grievance: Mark South Discharge
Page 20

option was available. Rather, the grievant made up excuses concerning the amount of time that it would take for him to make the trip and that since he could not fly he would have to drive from Ankeny, Iowa to St. Louis. All of this testimony is without foundation and should not be credited.

In conclusion, the preponderance of the evidence showed that in addition to the grievant's substantial number of absences the grievant abused his sick leave by making fraudulent calls representing that he was sick when the evidence showed that he was not. Furthermore, he failed to attend a mandatory meeting with the Chief Pilot. Accordingly, there is no basis to sustain this grievance and the Company requests that the termination be upheld and the grievance be denied.

The Union on the other hand maintains that there was no just cause to terminate the grievant. In summary, the Union maintains that the Company bears the burden of proof in this case. Because of the nature of termination, the Union maintains that the appropriate standard of review in this case is that the Company must show by clear and convincing evidence that it had just cause to terminate the grievant. According to the Union "a lesser burden of proof fails to give consideration to the harsh effects of summary discharge upon the employee in terms of future employment."

The Union claims that the Company failed to carry its burden of proof. Rather, the evidence in this case shows that the grievant used a pretext of the denial of family medical leave to "boot strap" a basis to discharge the grievant.

The grievant was terminated based its letter for chronic absence and abuse of sick leave. The Union admits that the grievant had been absent from work for a number of days prior to the incident that resulted in this termination. However, it notes that each

GoJet Airlines and
Teamsters Local 618
Grievance: Mark South Discharge
Page 21

absence was properly documented and the Company has never issued any documented warnings or discipline as provided for in its sick leave policy. Indeed, the absences which were cited were based upon his 2009 work history which the Union maintains was not serious enough to issue any discipline in written form.

The evidence showed that the grievant's absences incurred in 2009 were legitimate and necessary and the Company had not chosen to discipline the grievant as a result. The Company in this regard points to a meeting with Captain Craig at the time the grievant was promoted from First Officer to Pilot. Yet, there is no evidence that any discussion regarding the grievant's absences during that period was disciplinary in nature. Indeed, if the grievant's attendance was such a problem for GoJet at that time the grievant could have been either discharged at the end of his probationary period or would have been subject to more progressive discipline than any undocumented or warning.

The Union claims that the Company unreasonably relied on its subjective attendance policies to suddenly charge the grievant with absences which it had previously approved and had not given sufficient warning or notice to the grievant that this would result in any disciplinary action. According to the Union "the Company's decision not to discipline or discharge Mark South while on probation in 2009 and the decision by GoJet to promote Mark South to Captain in December 2009 all prove GoJet had little concern regarding his absences in 2009 and this evidence serves to undermine the contrived excuse by the Company to discharge Mark South for chronic absence."

The evidence showed that the grievant requested FMLA leave when he immediately found out that his wife required rotator cuff surgery. The grievant credibly testified that he attempted to schedule the surgery at a later date so that he would be able