IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| MARK SOUTH,<br><br>         Plaintiff,<br><br>vs.<br><br>GOJET AIRLINES, LLC,[1]<br><br>         Defendant. | **No. 4:12-cv-00378 – JEG**<br><br>**O R D E R** |

This matter comes before the Court on motion by Defendant GoJet Airlines, LLC (GoJet),

to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure

12(b)(1), lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), and

improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3), or in the alternative, to

transfer venue pursuant to 28 U.S.C. § 1406(a).  Plaintiff Mark South (South) resists.  A hearing

on this matter was held on August 13, 2013.  Attorney Patrick R. Martin represented Defendant,

and attorneys Michael J. Carroll and Kodi A. Brotherson represented Plaintiff.  The motion is

fully submitted and ready for disposition.

## I.    BACKGROUND

South was employed by GoJet as a pilot from January 2009 to May 14, 2010.  South lived

in Ankeny, Iowa, but was based out of Chicago, Illinois.  South was a member of an airline

union, International Brotherhood of Teamsters, Airline Division, Local 619 (the Union); and his

terms and conditions of employment, including leave, discipline and discharge, grievances, and

arbitration, were governed by a collective bargaining agreement (CBA) between GoJet and

its pilots.

---

[1] On November 20, 2012, the parties entered a Joint Stipulation of Dismissal of Defendant
Trans States Airlines, Inc.

GoJet is a commercial passenger airline that operates flights as United Express and Delta Connection and is a Delaware limited liability company, headquartered in Bridgeton, Missouri, a suburb of St. Louis.  Trans States Holdings, Inc. (Trans States), is GoJet's parent company and sole member and is incorporated in Delaware and, like GoJet, has its principle place of business in Bridgeton, Missouri.  GoJet maintains flight crew bases in St. Louis, Missouri; Chicago, Illinois; and Raleigh-Durham, North Carolina.  GoJet does not have any crew bases, offices, or property in Iowa; nor is GoJet authorized to conduct any business in Iowa.

According to South's Petition, his wife fell and injured herself on March 10, 2010.  The injury required surgery, which was scheduled for May 7, 2010.  On April 21, 2010, South submitted paperwork to GoJet to request leave from May 7 through May 15, 2010, to care for his wife under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 et seq.  The completed paperwork, including the physicians findings, was submitted to GoJet on April 30, 2010.  On May 4, 2010, Chief Pilot Captain Dennis Craig (Craig), South's supervisor, called South and asked him to reconsider taking FMLA leave because GoJet was short on pilots.  On May 5, 2010, Craig informed South that his request for FMLA leave was denied because he did not make his request thirty days prior to taking leave and he did not earn sixty percent of his salary over the previous twelve months.  Subsequently, South called in sick for the days he had previously requested FMLA leave.

On May 13, 2010, Craig directed South to report to his office in St. Louis, Missouri, for a meeting that would be held on May 14, 2010.  South did not show up for the May 14 meeting.  Craig thereafter terminated South's employment and sent him a termination letter to that effect.  The termination was based on South's chronic absenteeism and for falsely calling in sick when his FMLA leave request was denied.

In accordance with the CBA grievance procedure, the Union filed a grievance complaint of South's termination on May 21, 2012.  After failing to resolve the grievance at earlier stages, the

matter proceeded to an arbitration hearing convened in St. Louis, on April 23, 2012.  In an

October 30, 2012, Order and Award, the arbitrator sustained the grievance in part, finding

as follows:

> The company has failed to meet its burden of establishing that the grievant had engaged in chronic absenteeism.  The Company did not follow the terms of its General Operations Manual with respect to the imposition of progressive discipline for this offense. This should mitigate the discipline from termination.
>
> The evidence did show that the grievant failed to follow appropriate policy in reporting off sick for his scheduled May 12, trip.  This gives the appearance the grievant abused Company policy in order to circumvent the denial of FMLA leave.  Therefore, the discipline should be reduced to a 60 day suspension.

Opinion and Award 2, Pl.'s Resist. - Ex. A, ECF No. 21-3.  South's discipline was reduced to a

60-day suspension.

In the meantime, South filed the instant action on May 4, 2012, in the Iowa District Court

for Polk County, alleging his termination was in retaliation for exercising his rights under the

FMLA.  GoJet was served notice on July 30, 2012, and thereafter removed the action on August

20, 2012, pursuant to 28 U.S.C. § 1441 and 28 U.S.C. § 1331.  GoJet filed this Motion to

Dismiss on September 24, 2012.  After four motions for extension of time, the motion was

resisted, and a hearing on this motion was conducted on August 13, 2013.

## II.   DISCUSSION

### A.  Subject Matter Jurisdiction

GoJet moves to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of

Civil Procedure 12(b)(1).  When a defendant makes a factual challenge to jurisdiction, "no pre-

sumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed

material facts will not preclude the trial court from evaluating for itself the merits of jurisdic-

tional claims."  Osborn v. United States, 918 F.2d 724, 730 (8th Cir. 1990); see Iowa League of

Cities v. E.P.A., 711 F.3d 844, 861 (8th Cir. 2013).

It is undisputed that this Court has jurisdiction to hear this case under federal question jurisdiction, 28 U.S.C. § 1331, and also diversity of citizenship jurisdiction, 28 U.S.C. § 1332.[2] GoJet, however, argues that this Court does not have subject matter jurisdiction because the CBA requires that claims arising under the CBA be submitted to mandatory, binding arbitration, and in fact this claim has been arbitrated to a final and binding decision. GoJet further argues that subject matter jurisdiction in this Court does not exist because Plaintiff's claim requires an interpretation of the CBA and is thereby preempted by, and subject to, mandatory dispute resolution under the Railway Labor Act (RLA), 45 U.S.C. § 151 et seq.

### 1. CBA Arbitration Provision

GoJet first contends that this Court lacks subject matter jurisdiction because the CBA mandates this claim be decided by arbitration. Section 25.A of the CBA, System Board of Adjustment, contains an arbitration clause that states as follows:

> In compliance with Section 204, Title II of the Railway Labor Act, as amended, there is hereby established a System Board of Adjustment for the purpose of adjusting and deciding *disputes which may arise under the terms of this Agreement* and which are properly submitted to it. This Board shall be known as the GoJet Airlines Pilots' System Board of Adjustment.

CBA 66, Ex. 1 to Craig's Decl., ECF No. 9-4 (emphasis added). Section 15.F of the CBA provides that "[GoJet] shall grant family and medical leaves in accordance with applicable law." Id. at 45. GoJet argues that these provisions, read together, mandate that this dispute be settled through arbitration, pursuant to the grievance procedure contained in the CBA.

In support, GoJet relies on 14 Penn Plaza LLC v. Pyett, 556 U.S. 247 (2009), for the proposition that the CBA's arbitration clause must be upheld unless the FMLA explicitly provides otherwise. However, 14 Penn Plaza is distinguished from the case at hand. In 14 Penn

---

[2] Plaintiff's cause of action arises under the FMLA, 29 U.S.C. § 2615 et seq., over which federal courts have original jurisdiction. See 28 U.S.C. § 1331. It is noteworthy that Defendants removed this action based on federal question jurisdiction. Diversity has not been an issue.

<u>Plaza</u>, unionized employees, who were subject to a collective bargaining agreement, brought claims under the Age Discrimination in Employment Act (ADEA) after they were reassigned to less desirable positions.  <u>Id.</u>  The Court held that a provision in the collective bargaining agreement requiring arbitration of ADEA claims was enforceable because the provision "clearly and unmistakably" mandated arbitration of ADEA claims.  <u>Id.</u> at 274.  The collective bargaining agreement specifically provided that there shall be no discrimination against employees by reason of age, including claims under the ADEA, and "[a]ll such claims shall be subject to the grievance and arbitration procedures . . . as the sole and exclusive remedy for violations."  <u>Id.</u> at 252 (citation and internal quotation marks omitted).  The Court noted that the union and the employer "collectively bargained in good faith and agreed that employment-related discrimination claims, including claims brought under the ADEA, would be resolved in arbitration."  <u>Id.</u> at 256.

In this instance, the CBA does not "clearly and unmistakably" require all relevant and available FMLA claims to be decided by arbitration.  The CBA provides only that "disputes which may arise under the terms of this Agreement" shall be submitted to arbitration.  CBA 66, Ex. 1 to Craig's Decl., ECF No. 9-4.  The CBA governs Plaintiff's right to take leave under the FMLA as well as all procedures for discipline and discharge; however, the CBA does not govern the statutory cause of action asserted by South.  South filed a claim alleging that he was retaliated against for exercising his statutory rights under the FMLA.  The CBA only requires arbitration over contractual rights under the terms of the agreement and does not mandate arbitration of statutory claims.  <u>See</u> <u>Wright v. Universal Mar. Serv. Corp.</u>, 525 U.S. 70, 79 (1998) (noting that provisions requiring arbitration of statutory claims must be explicitly stated in the collective bargaining agreement); <u>see also</u> <u>Keymer v. Mgmt. Recruiters Int'l, Inc.</u>, 169 F.3d 501, 505 (8th Cir. 1999) (noting that in <u>Wright</u>, the Court found the "presumption of arbitrability in collective bargaining agreements does not extend to statutory claims of employment discrimination" and

held that "any collective bargaining agreement requirement to arbitrate employment discrimina-

tion claims must be 'particularly clear'" (quoting Wright, 119 U.S. at 79)).  The claim at issue in

the present case is derived from the FMLA, not the CBA, and thereby is not subject to the

CBA's arbitration provision.

Although South submitted a grievance for arbitration pursuant to the CBA, the arbitrator

did not decide South's FMLA claim.  Rather, the arbitrator only determined that "[GoJet] failed

to meet its burden of establishing that [South] had engaged in chronic absenteeism" and that

"[t]he evidence did not show that [South] failed to follow appropriate policy in reporting off sick

for his scheduled May 12, trip"; both determinations were made by interpreting the CBA.

Opinion and Award 1-2, Pl.'s Resist. - Ex. A, ECF No. 21-3.  The arbitrator explicitly stated, "it

is noted that this Board has not issued an opinion concerning whether the grievant was in fact

eligible for FMLA."  Id. at 31.  The arbitrator did not make a final determination on South's

FMLA claim, and accordingly, this Court retains jurisdiction over this matter.  See Alexander v.

Gardner-Denver Co., 415 U.S. 36, 53-54 (1974) (holding that a final resolution of a discrim-

ination complaint through arbitration as provided by a collective bargaining agreement does not

preclude pursuing statutory rights under Title VII).

Accordingly, this Court has subject matter jurisdiction over South's FMLA claim because

the CBA does not "clearly and unmistakably" require arbitration of statutory claims, including

claims under the FMLA, and the final arbitration did not render a decision pertaining to South's

FMLA claim.

## 2.  Preemption by the Railway Labor Act

GoJet, as an air carrier subject to the RLA, argues that this Court lacks subject matter

jurisdiction because it is preempted by the RLA.  GoJet contends that a resolution of South's

FMLA claim requires an interpretation of the CBA and the RLA gives district court's no

authority to interpret contractual provisions of collective bargaining agreements.  They allege

that as a "minor dispute," this claim should be determined exclusively through dispute-resolution procedures with appeals to the system board of adjustment, and any remedy issued by the system board is complete and final.

The RLA's purpose is to "promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes." Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 252 (1994). The RLA requires that a system board of adjustment resolve all "minor disputes" through RLA procedure. Jenisio v. Ozark Airlines, Inc., 187 F.3d 970, 972-73 (8th Cir. 1999). Minor disputes are defined as any conflict concerning the interpretation of pro-visions of a collective bargaining agreement. Id. "The RLA preempts review by both state and federal courts of any claims that require a court to interpret a collective bargaining agreement, as those claims are solely within the jurisdiction of the National Railroad Adjustment Board." Thompson v. Air Transp. Int'l. LLC, 664 F.3d 723, 725 (8th Cir. 2011). The RLA, however, does not preempt review of independent claims arising out of federal or state law, which do not require the court to interpret the collective bargaining agreement. Id. at 725-26. When the dispute only requires a reference to, or an application of, the collective bargaining agreement, the claim is not preempted. Id. at 726.

Contrary to GoJet's argument, the RLA does not preempt this cause of action because this Court is not required to interpret the CBA in order to resolve South's FMLA claim. South's FMLA claim is a federal statutory claim independent of the CBA. See Pittari v. Am. Eagle Airlines, Inc., 468 F.3d 1056, 1060-61 (8th Cir. 2006) (holding the RLA did not preempt the plaintiff's ADA claim because "[b]y asserting an ADA discrimination claim, [plaintiff] seeks to enforce a federal statutory right, not a contractual right embodied in the collective bargaining agreement"). The CBA merely provides that the GoJet will "grant family and medical leaves in accordance with applicable law." CBA 45, Ex. 1 to Craig's Decl., ECF No. 9-4. The meaning of this provision is not in dispute, and the resolution of South's claim merely requires a reference

to the CBA, not an interpretation of the CBA.  See Thompson, 664 F.3d at 726 ("[W]here the meaning of a provision in the CBA is not disputed, the application of that provision to a set of facts involves only reference to the provision rather than interpretation." (citation and quotation marks omitted)).  Accordingly, this Court's subject matter jurisdiction is not preempted by the RLA because South's FMLA claim is independent of the CBA.

## B.  Personal Jurisdiction

GoJet moved to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).  "To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that personal jurisdiction exists, which is accomplished by pleading sufficient facts 'to support a reasonable inference that the defendant[ ] can be subjected to jurisdiction within the state.'"  K-V Pharm. Co. v. J. Uriach & CIA, S.A., 648 F.3d 588, 591-92 (8th Cir. 2011) (alteration in original) (quoting Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1072 (8th Cir. 2004)).  The Court is not bound by the pleadings alone and is permitted to consider "the affidavits and exhibits presented with the motion and in opposition thereto."  Wells Dairy, Inc. v. Food Movers Int'l, Inc., 607 F.3d 515, 518 (8th Cir. 2010) (quoting Block Indus. v. DHJ Indus., Inc., 495 F.2d 256, 260 (8th Cir. 1974) (internal quotations omitted)).

Personal jurisdiction over nonresident defendants exists "only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause."  Romak USA, Inc. v. Rich, 384 F.3d 979, 984 (8th Cir. 2004) (quoting Dever, 380 F.3d at 1073).  The jurisdictional reach of the long-arm statute of the forum state, Iowa, is commensurate with that permitted by due process principles embedded in the federal constitution.  See Hammond v. Fla. Asset Fin. Corp., 695 N.W.2d 1, 5 (Iowa 2005).  "Due process requires that there be minimum contacts between the nonresident defendant and the forum state such that the assertion of personal juris-diction is consistent with traditional notions of fair play and substantial justice."  Wells Dairy, 607 F.3d at 518 (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291-92

(1980); and <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945)).  "The defendant must have

engaged in 'some act by which the defendant purposefully avails itself of the privilege of con-

ducting activities within the forum state, thus invoking the benefits and protections of its laws.'"

<u>K-V Pharm.</u>, 648 F.3d at 592 (quoting <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462,

475 (1985)).

The parties agree that GoJet is not subject to general jurisdiction because GoJet does not

conduct systematic and continuous contacts with the forum.  The disputed issue, therefore, is

whether or not GoJet is subject to specific jurisdiction in Iowa.  Specific jurisdiction is estab-

lished by showing that the "defendant has purposefully directed [its] activities at residents of the

forum, and the litigation results from alleged injuries that arise out of or relate to those activi-

ties."  <u>Burger King</u>, 471 U.S. at 472 (internal citations and quotation marks omitted).  In evalu-

ating the sufficiency of a defendant's contacts, the Court considers five factors, of which the first

three are afforded primary importance: "1) the nature and quality of the defendant's contacts

with the forum state; 2) the quantity of such contacts; 3) the relation of the cause of action to the

contacts; 4) the interests of the forum state in providing a forum for its residents; and 5) the

convenience of the parties."  <u>Steinbuch v. Cutler</u>, 518 F.3d 580, 586 (8th Cir. 2008) (citing

<u>Burlington Indus., Inc. v. Maples Indus., Inc.</u>, 97 F.3d 1100, 1102 (8th Cir. 1996)).  While

"[s]ignificant weight is given to the first three factors," <u>Dever</u>, 380 F.3d at 1074, the Court must

"look at all of the factors and the totality of the circumstances in deciding whether personal

jurisdiction exists."  <u>K-V Pharm</u>, 648 F.3d at 592-93.

South contends this Court has personal jurisdiction over GoJet because GoJet knew South

was a resident of Iowa and domiciled in Iowa throughout his employment with GoJet, sent mail

to his Iowa address (including his termination letter), made telephone calls to South's Iowa

residence, and deposited South's paychecks in his Iowa bank account.[3]  South also asserts that GoJet's website creates sufficient contacts with the forum to exercise personal jurisdiction over GoJet because the website has a secure password protected area for employees and is "highly interactive."

GoJet counters by arguing that it has no corporate presence in Iowa, is not registered to do business in Iowa, owns no real property in Iowa, has no offices in Iowa, has no employees based in Iowa, and does not advertise or sell airline tickets in Iowa.  In addition, GoJet asserts that the decisions to deny the FMLA leave and to terminate South were made in Missouri, and that no witnesses reside in Iowa, except South.

Applying the facts to the five-factor test, this Court finds GoJet's contacts with Iowa are insufficient to establish personal jurisdiction.  The nature and quality of GoJet's contacts with Iowa are too attenuated to hold them to jurisdiction in this forum.  GoJet is not registered to do business in Iowa, has no employees based in Iowa, operates no flights out of Iowa, and does not sell airline tickets or advertise in Iowa.  GoJet is based out of Missouri and has flight crews located in Illinois, Missouri, and North Carolina.  Although South lived in Iowa during his employment with GoJet, he was based out of Chicago, Illinois.  See Hanson v. Denckla, 357 U.S. 235, 253 (1958) ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state."). Furthermore, the conduct underlying South's FMLA claim arises out of Missouri, which is where the decision to terminate South for exercising his rights under the FMLA was made, where Craig summoned South to meet, and where the decision to terminate South occurred. Virtually all Defendant's conduct underlying the cause of action arose in Missouri.

---

[3] South also claims GoJet had "a number" of other employees in Iowa.  However, Roger Ross, the payroll manager for GoJet's parent corporation, signed a declaration asserting that GoJet has 995 employees, two of whom reside in Iowa.

The fact that GoJet made occasional phone calls to Iowa and annually mailed South's W-2 tax forms to Iowa is also unavailing.  See Wright v. City of Las Vegas, 395 F. Supp. 2d 789, 803 (8th Cir. 2005) ("[T]he balance of authority supports the view that telephone calls and mailings directed at a forum's residents are, alone, insufficient to amount to minimum contacts.").  South cites Norton v. Local Loan, 251 N.W.2d 520, 522 (Iowa 1977), for the proposition that even a single phone call can be sufficient to establish personal jurisdiction.  Norton, however, is readily distinguishable from the facts at hand because the cause of action in Norton was a violation of the Iowa consumer credit code, and although the agent for the defendant credit agency was located in Nebraska, the agent made phone calls to the plaintiff, who was located in Iowa.  Id. at 520.  The court noted the unique nature of the consumer credit code meant that a single telephone call from another state to Iowa was sufficient to give Iowa jurisdiction over the defendant because "[t]he maker of such a telephone call into Iowa should assume the burdens of Iowa law."  Id. at 522.  There is nothing unique about GoJet's limited phone calls and mailings to Iowa such that hold them to jurisdiction in this forum.  See Burlington Indus., 97 F.3d at 1103 (finding the one hundred phone calls from the defendant to the forum state were "a consider-ation, [but] they are insufficient, alone, to confer personal jurisdiction").

Neither does GoJet's website subject GoJet to jurisdiction in this forum.  When the court must consider website contacts under a specific jurisdiction analysis, the Eighth Circuit analyzes the activities on the website on a "sliding scale" that "runs from active contract formation and repeated transmission of computer files to mere posting of information on a website."  Johnson v. Arden, 614 F.3d 785, 796 (8th Cir. 2010); see also Brown v. Kerkhoff, 504 F. Supp. 2d 464, 504 (S.D. Iowa 2007).  "Courts adopting this test have emphasized that a defendant's digital activities must be intentionally directed into the forum."  Brown, 504 F. Supp. 2d  at 505.  In this case, it is apparent that GoJet's website is passive and it is not intentionally directed to residents of Iowa.  The website is not highly interactive and does little more than make information

available. The essentially unchallenged Declaration of Glennon Becker, the director of information technology for GoJet's parent corporation, states that GoJet's website has no interactive features, customers cannot purchase tickets, employees cannot correspond with GoJet, applicants cannot apply for jobs through the website, and pilots do not bid for month schedules via the website.[4] Accordingly, the Court must find GoJet's website does not subject GoJet to the jurisdiction of this forum.

After carefully considering the relevant factors, this Court finds that GoJet has not purposefully directed its activities to the forum state sufficient to establish minimum contacts. Therefore, personal jurisdiction over GoJet in this Court is lacking.

### C. Improper Venue

GoJet also asserts that venue does not lie with this Court and has moved to dismiss, or in the alternative, to transfer venue. The general venue statute, 28 U.S.C. § 1391(b), provides that venue is appropriate in

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

GoJet, as an LLC, is deemed to reside in any judicial district in which it is subject to personal jurisdiction. 28 U.S.C. § 1391(c)(2). As GoJet does not reside in Iowa, the events leading to the underlying cause of action did not occur in Iowa, and GoJet cannot be found in Iowa, venue in this Court is improper.

---

[4] Plaintiff asserts in his Brief that pilots bid for schedules through the website but without record support for the allegation, failing to contradict the sworn statement to the contrary which identifies a specific separate website used for the bidding purposes.

Title 28 U.S.C. § 1406(a) provides, "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  Where both venue and personal jurisdiction are lacking, a district court may transfer a case under section 1406(a) to avoid injustice.  Goldlawr, Inc. v. Heiman, 369 U.S. 463 (1962)  ("The language of § 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not."); see Eggleton v. Plasser & Theurer Exp. Von Bahnbaumaschinen Gesellschaft, MBH, 495 F.3d 582, 584 (8th Cir. 2007) (referring parenthetically to Goldlawr for the proposition that "§ 1406(a) grants district courts the power to transfer cases for lack of personal jurisdiction, as well as for improper venue," and approving the Virginia district court's decision to transfer the case to the Nebraska district court under § 1406(a) where venue was proper rather than dismissing the case for lack of personal jurisdiction); High Plains Const., Inc. v. Gay, 831 F. Supp. 2d 1089, 1098 n.3 (S.D. Iowa 2011) (noting that § 1406(a) allows a court to transfer a case to a district in which venue is proper rather to dismiss the case for lack of personal jurisdiction).  If transfer is required, Plaintiff argues personal jurisdiction would exist in either the Eastern District of Missouri, where GoJet is located, or the Northern District of Illinois, the location of South's duty station.  As GoJet is headquartered in St. Louis, Missouri, and the events leading to this cause of action occurred in Missouri, the Court finds the proper venue for this case is in Eastern District of Missouri.  Accordingly, the Court finds that this case should be transferred to the United States District Court for the Eastern District of Missouri pursuant to 28 U.S.C. § 1406(a).

### III.   CONCLUSION

For the reasons stated, Defendant's motions to dismiss for lack of subject matter jurisdiction, lack of personal jurisdiction, and improper venue, ECF No. 9, must be **denied**, and Defendant's alternative motion to transfer venue must be **granted**.  The Clerk of Court is directed to transfer this case to the United States District Court for the Eastern District of Missouri.

**IT IS SO ORDERED.**

Dated this 30th day of September, 2013.

_____

JAMES E. GRITZNER, Chief Judge
U.S. DISTRICT COURT